# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANTZY ST. PIERRE, | : | |
|     Plaintiff | : | No. 1:17-cv-01344 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| KIRSTJEN NIELSEN, | : | |
| Acting Secretary of the | : | |
| Department of Homeland Security,[1] et al., | : | |
|     Defendants | : | |

## **MEMORANDUM**

Before the Court is Defendants Kirstjen Nielsen, Chad A. Readler, William C. Peachey, and Jeffrey S. Robins' (collectively referred to herein as "Defendants") motion to dismiss Plaintiff Frantzy St. Pierre's ("Plaintiff") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 8.) For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

### A. Procedural Background

Plaintiff initiated the above-captioned action on July 31, 2017 by filing a complaint against Defendants pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., in connection with the United States Citizenship and Immigration Services' ("USCIS") denial of his I-485 application to adjust status. (Doc. No. 1.) On October 6, 2017, Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8), along with a brief in support (Doc. No. 10). On November 2, 2017, noting that Plaintiff was required to file a brief in opposition to the motion on or before October 31, 2017

---

[1] Since the commencement of this action, Kirstjen Nielsen has succeeded Elaine C. Duke as Acting Secretary of the Department of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party in an action brought against that public officer in his or her official capacity.

pursuant to Local Rule 7.6, the Court directed Plaintiff to show cause on or before November 8, 2017, why Defendants' motion should not be granted. (Doc. No. 12.) On November 7, 2017, Plaintiff filed both a brief in opposition to the motion to dismiss (Doc. No. 13), as well as a document containing Plaintiff's "response to the order to show cause and motion for leave to amend the complaint" (Doc. No. 14). Having been given leave to file an amended complaint on November 13, 2017 (Doc. No. 16), Plaintiff filed an amended complaint on November 17, 2017 (Doc. No. 17). After obtaining an extension of time "to file a consolidated reply and answer or response to" both Plaintiff's brief in opposition and amended complaint (Doc. Nos. 18, 19), Defendants filed a "reply in support of their motion to dismiss and opposition to the amended complaint" on December 15, 2017 (Doc. No. 20). Accordingly, although Plaintiff filed an amended complaint (Doc. No. 17), subsequent to Defendants' filing of a motion to dismiss (Doc. No. 8), due to the parties' respective filings, the Court considers Defendants' motion to dismiss (Doc. No. 8), in connection with Plaintiff's amended complaint (Doc. No.17).[2]

On July 2, 2018, after reviewing "the amended complaint, the parties' briefing, and the relevant authorities" and concluding that "disposition of Defendants' motion to dismiss [was] unwarranted because the record presently before the Court [was] insufficient so as to permit the Court to examine the propriety of USCIS' denial of Plaintiff's application to adjust status[,]" the Court ordered the parties to file supplemental briefing addressing certain issues identified by the Court in relation to the motion to dismiss, and directed the parties to submit "the full administrative record pertaining to Plaintiff's I-485 application to adjust status with USCIS."

---

[2] See, e.g., Macelus v. Capital Collection Serv., No. 17-cv-2025, 2017 WL 5157389, at *2 (D.N.J. Nov. 7, 2017) ("If some of the defects raised in the original motion remain in the new pleading, the [C]ourt simply may consider the motion as being addressed to the amended pleading." (quoting Wright & Miller, 6 FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed. 2018); Weber v. Pilot Travel Ctrs., No. 11-cv-5977, 2012 WL 924871, at *2 (D.N.J. Mar. 19, 2012))).

(Doc. No. 24). The parties having complied with the Court's directive (Doc. Nos. 25, 26, 27, 28), Defendants' motion is now ripe for disposition.

**B.     Factual Background[3]**

**1.     Allegations in the Amended Complaint**

Plaintiff is an adult Haitian citizen and national currently residing in Harrisburg, Pennsylvania. (Doc. No. 17 ¶ 6.) Defendants, all of whom are named in their official capacities, include the acting director of the Department of Homeland Security ("DHS") and various individuals employed by USCIS. (Id. ¶¶ 7-10.) Plaintiff's allegations stem from USCIS' January 28, 2016 denial of his I-485 application for adjustment of status to that of a permanent resident. (Id. ¶ 18.)

Plaintiff entered the United States through Miami, Florida in September of 2009 pursuant to a C1/D visa issued to him on July 27, 2009 (id. ¶¶ 11-12), which indicates that Plaintiff was employed as a janitor for a cruise line known as Celebrity Cruises (Doc. Nos. 10 at 2-3, 17-1 at 1).[4] Having possessed a stamped I-94 arrival record, "Plaintiff has been continuously present in the United States since September 6, 2009." (Doc. No. 17-1.) In accordance with Section 244(b)(1) of the Immigration and Nationality Act ("INA"), Haiti has been designated for temporary protected status ("TPS") by DHS since January of 2010.[5] (Id. ¶ 13.) Haiti's TPS

---

[3] Unless otherwise noted, the facts discussed herein are derived from Plaintiff's amended complaint. (Doc. No. 17.) The Court limits its discussion of the factual background to those allegations relevant to the motion presently before the Court.

[4] Nonimmigrant visa categories include, inter alia, a "D" visa, which is considered by USCIS to be a "crewmember" visa, and a "C" visa, which is a visa for "transiting the United States." See, e.g., U.S. DEPARTMENT OF STATE – BUREAU OF CONSULAR AFFAIRS, Directory of Visa Categories, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/all-visa-categories.html (last visited Nov. 13, 2018).

[5] If a country is designated for TPS, nationals of that country may remain in the United States "if certain temporary conditions, such as armed conflict or environmental disaster, make safe return impossible." See Katherine Buckel, Developments in the Executive Branch, GEO. IMMIGR. L. J.

3

designation has since "been extended several times, and has not lapsed since its original designation." (Id. ¶ 14.) Shortly after Haiti was originally designated for TPS, "Plaintiff registered for, and was granted, TPS," and he was re-granted TPS most recently on February 17, 2017. (Id. ¶ 15.) Accordingly, "Plaintiff's TPS has been continuously valid since July 22, 2011." (Id.)

In January of 2015, Plaintiff married Olguine St. Pierre, a United States citizen who subsequently "filed an I-130 Petition for Alien Relative" that was approved by USCIS.[6] (Id. ¶ 16.) Accordingly, "an immigrant visa was immediately available to Plaintiff as the alien-spouse of a United States citizen," and because Plaintiff was already present in the United States at this time, "he filed an I-485 application to adjust status with USCIS" to that of a permanent resident on March 11, 2015.[7] (Id. ¶ 17.) In November of 2015, Plaintiff was interviewed for purposes of determining his eligibility for adjustment of status. (Id.)

On January 28, 2016, USCIS informed Plaintiff that it was denying his I-485 application to adjust status on the basis that "Plaintiff's entry [into the United States] as an alien crewman barred his adjustment of status." (Id. ¶ 18.) Plaintiff moved for USCIS to "reconsider its decision and/or reopen the case to receive additional evidence," and USCIS denied this motion in

---

379, 379 (2010) (describing TPS program and noting that following major earthquake in Haiti in 2010, the TPS program was announced with respect to Haitian nationals present in the United States).

[6] "A United States citizen who seeks to gain lawful permanent resident status for an eligible family member must begin the process by filing an I-130 petition with USCIS on behalf of an alien who is an 'immediate relative.'" Robinson v. Napolitano, 554 F.3d 358, 361 (3d Cir. 2009) (citing 8 U.S.C. §§ 1151(b)(2)(A)(i); 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1)).

[7] Along with the I-130 petition for an alien relative, the I-485 application to adjust status is one of "the two required forms for applying for lawful permanent residency based on a family relationship to a United States citizen." Bozilovic v. Holder, No. 15-cv-91, 2016 WL 8716256, at *1 n.3 (E.D. Pa. Feb. 5, 2016) ("The I-485 [a]pplication, filed by the alien, serves to establish his eligibility to adjust his immigration status to that of a lawful permanent resident.").

4

a letter dated May 30, 2017.[8] (Id. ¶ 19.) According to the complaint, Plaintiff is not a "crewman" for purposes of the INA, and he "has not served on board a vessel or aircraft since 2009."[9] (Id. ¶ 20.)

The amended complaint sets forth one count against Defendants, alleging a violation of the APA, 5 U.S.C. §§ 701 et seq., on the following grounds:

> First, Plaintiff has met all three of the substantive requirements for adjustment . . . in that (1) he has made an application for such adjustment, (2) he is and was eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa was immediately available to him at the time his application was filed. Second, Plaintiff is not an "alien crewman" for the purposes of [S]ection 1255(c). Third, 8 U.S.C. § 1254a(f)(4) provides that "for purposes of adjustment of status under [8 U.S.C. § 1255] . . . the alien [with TPS] shall be considered as being in, and maintaining, lawful status as a nonimmigrant."

(Id. ¶ 23) (third and fourth alterations in original). According to Plaintiff, "Defendants failed to enforce and administer the provisions of 8 U.S.C. §§ 1254a and 1255(a) in conformance with the law," and "acted arbitrarily, capriciously, and contrary to law in violation of the [APA] by denying Plaintiff's I-485 application to adjust status." (Id. ¶¶ 24-25.) Finally, Plaintiff alleges that he has exhausted all applicable administrative remedies and "has no other recourse to judicial review other than by this action." (Id. ¶¶ 26-27.)

### 2. Exhibits to the Amended Complaint

Plaintiff's amended complaint is accompanied by six exhibits. Exhibit 1 is a copy of Plaintiff's visa, which includes a C1/D designation (Doc. No. 17-1), while Exhibit 2 consists of a

---

[8] As noted in the amended complaint, "[t]hough the denial of an I-485 application is generally unappealable, USCIS does allow aliens to move to reconsider the decision or reopen the case for the submission of new evidence." (Doc. No. 17 ¶ 18.) In addition, the denial of the motion for reconsideration/motion to reopen by USCIS is not appealable. (Id. ¶ 19.)

[9] Further, "Plaintiff is currently employed at an Amazon.com warehouse in Carlisle, Pennsylvania," and also "works on the weekends at a home in New York City caring for developmentally disabled children." (Id. ¶ 20.)

copy of Plaintiff's I-94 arrival/departure record (Doc. No. 17-2).[10] Exhibit 3 includes notices provided to Plaintiff indicating his receipt of TPS (Doc. No. 17-3), and Exhibit 4 is a copy of an I-797 Notice of Action form notifying Plaintiff that he was approved for a visa on the basis that his spouse is a United States citizen (Doc. No. 17-4). Exhibits 5 and 6 include copies of USCIS' decision denying Plaintiff's I-485 application to adjust status (Doc. No. 17-5), and its subsequent decision denying Plaintiff's motion to reopen/reconsider its denial of his application to adjust status (Doc. No. 17-6), respectively.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly

---

[10] "The I-94 Form is an arrival/departure record issued by a Customs and Border Protection . . . officer to foreign visitors entering the United States." Bower v. Egyptair Airlines Co., 731 F.3d 85, 88 n.3 (1st Cir. 2013).

6

and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the Defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v.

7

Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted) (quoting 5B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)).

   B.   **Action Alleging a Violation of the APA**

Under the APA, "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A). Judicial review of administrative actions under this standard is highly deferential. See Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007). The scope of review is, therefore, "narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicles Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). However, the Court must "engage in a substantial inquiry" of an agency's decision, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971), and vacate the decision if the agency "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." See State Farm, 463 U.S. at 43.

### III. DISCUSSION

The issue before the Court is whether USCIS properly denied Plaintiff's application for adjustment of status in light of its determination that Plaintiff initially entered the United States as an alien crewman under the INA. In evaluating the propriety of USCIS' decision, the Court must determine whether Plaintiff's TPS designation subsequent to his entry into the United States permits him to overcome the bar to adjustment of status for alien crewmen.

8

### A. Relevant Statutory and Regulatory Provisions

#### 1. Adjustment of Status and Prohibition on Adjustment for Alien Crewmen

Section 1255 of the INA provides that an alien's status may be adjusted to that of a person admitted for permanent residence "if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." See 8 U.S.C. § 1255(a). Section 1255 also sets forth an exception to the ability to adjust status for certain categories of aliens, including those deemed "alien crewmen." See id. § 1255(c) ("Other than an alien having an approved petition for classification as a [Violence Against Women Act] self-petitioner, subsection (a) shall not be applicable to (1) an alien crewman . . . ."). The INA defines a "crewman" as "a person serving in any capacity on board a vessel or aircraft." See id. § 1101(a)(10).

The corresponding regulatory framework provides that while alien crewmen are generally ineligible for such adjustment of status, certain limited circumstances may allow for adjustment of status. See 8 C.F.R. § 245.1(b)(2). Specifically, an alien crewman is barred from adjusting status under Section 245 of the INA unless:

> the alien establishes eligibility under the provisions of [S]ection 245(i) of the Act and § 245.10, is not included in the categories of aliens prohibited from applying for adjustment of status listed in § 245.1(c), is eligible to receive an immigrant visa, and has an immigrant visa immediately available at the time of filing the application for adjustment of status.

Id. § 245.1(b). Further, the associated regulation names various "categories of aliens prohibited from applying for adjustment of status," including "[a]ny alien who, on arrival in the United States, was serving in any capacity on board a vessel or aircraft or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon."

9

See id. § 245.1(b)(2). The ostensible policy consideration behind this prohibition is to prevent alien crewmen from "jumping ship," as "they reach our shores without going through the normal visa process." See Guinto v. INS, 774 F.2d 991, 992 (9th Cir. 1985).

### 2. TPS

TPS is a classification made by DHS as to a foreign country "due to conditions in the country that temporarily prevent the country's nationals from returning [to the country] safely, or in certain circumstances, where the county is unable to handle the return of its nationals adequately." See U.S. Citizenship and Immigration Services, Temporary Protected Status, DEP'T OF HOMELAND SEC., https://www.uscis.gov/humanitarian/temporary-protected-status (last visited Nov. 13, 2018). A TPS recipient "cannot be detained by DHS on the basis of his or her immigration status in the United States." See id. Notably, TPS is authorized by Section 1254 of the INA, which provides, inter alia, that "for purposes of adjustment of status under [S]ection 1255 of this title . . . [an] alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." See 8 U.S.C. § 1254(f)(4). Ten (10) countries, including Haiti, are currently designated for TPS.[11]

### B. Applicable Case Law

---

[11] Since the commencement of this action, DHS has announced that "[t]he designation of Haiti for TPS is terminated effective at 11:59 p.m., local time, on July 22, 2019." See Termination of the Designation of Haiti for Temporary Protected Status, 83 Fed. Reg. 2,648 (Jan. 18, 2018). An order issued October 3, 2018 by the United States District Court for the Northern District of California has subsequently enjoined DHS from enforcing its decision to terminate TPS for certain countries, including Haiti, and remains in effect pending the resolution of the action on its merits. That order was subsequently appealed to the United States Court of Appeals for the Ninth Circuit on October 12, 2018. See Ramos v. Nielsen, No. 18-cv-01554, 2018 WL 4778285 (N.D. Cal. Oct. 3, 2018), appeal docketed, Ramos v. Nielsen, No. 18-cv-16981 (9th Cir. Oct. 12, 2018). The ultimate fate of the TPS program as it pertains to Haiti does not bear on the Court's resolution of Defendants' motion to dismiss, however, due to the question of statutory interpretation presented by Plaintiff's claim.

Although the United States Court of Appeals for the Third Circuit has not confronted the precise issue presented by the instant action, the Third Circuit has deemed alien crewmen ineligible for adjustment of status based on the INA's prohibition on adjustment of status for alien crewmen in prior non-precedential decisions.  See Chica-Roman v. Attorney Gen., 462 F. App'x 221, 224 (3d Cir. 2012) (stating that "[b]y choosing to seek entry to the United States as a crewman," petitioner "agreed to the limitations associated with that status [and] cannot now avoid the consequences of those restrictions"); Sarup v. Attorney Gen., 423 F. App'x 231, 234 (3d Cir. 2011) (affirming denial of application to adjust status on the grounds that petitioner entered the county as an alien crewman).   Other circuits have reached similar conclusions, as well.  See Reganit v. Dep't of Homeland Sec., 814 F.3d 1253, 1258-59 (11th Cir. 2016)) (affirming district court's grant of summary judgment in favor of defendants and noting that "alien crewmen who have been admitted for the limited purpose of pursuing their occupation are prohibited from taking advantage of this access to later adjust status" due to "their 'relatively easy access to the United States'" (quoting Matter of Goncalves, 10 I. & N. Dec. 277, 279 (BIA 1963)); Guerrero v. Holder, 734 F.3d 45, 51 (1st Cir. 2013) (denying petition for review of BIA decision and stating that "[t]he record supports the BIA's finding that the circumstances surrounding [the plaintiff's] entry indicate that he entered the United States intending to work as a crewman, and pursuing employment as such").

The specific question of whether an individual who enters the United States as an alien crewman and is subsequently granted TPS remains barred from later adjusting status, however, has been examined in only one instance outside the context of the above-captioned action.  In Guerrero v. Johnson, the United States District Court for the Eastern District of Louisiana concluded that the INA's bar to adjustment of status does not apply to an alien crewman who

subsequently receives TPS and, therefore, "USCIS erred in denying [the plaintiff's] I-485 application on statutory grounds." See Guerrero v. Johnson, 138 F. Supp. 3d 754, 756, 760 (E.D. La. 2015) (denying motion to dismiss and stating that "[t]he alien crewman prohibition in § 1255(c)(1) and the general requirements regarding status in § 1255 [do not apply] where the applicant for adjustment in question has current temporary protected status, not to mention an independent basis for obtaining permanent residence").[12] The Plaintiff in Guerrero I, a citizen and national of Honduras who "originally entered the United States as an alien crewman on a C-1 visa in 1998[,]" was subsequently granted TPS, and "ha[d] lawfully remained in the United States under that status for more than fifteen years since[,]" challenged USCIS' denial of his I-485 application to adjust status on the grounds that "§ 1254(a)(f)(4) operates as an override of the prohibitions on adjustments [regarding status] contained in § 1255, effectively making it so that any person with a current [TPS] may seek adjustment from the Attorney General so long as they also meet requirements (1) and (3) of § 1255(a)." See Guerrero I, 138 F. Supp. 3d at 756, 758-59. Guerrero further argued that "USCIS' interpretation would lead to absurd results" because "[i]n order to seek permanent residence, [he] would have to return to the very conditions in Honduras that Congress decided he could be protected from through [TPS]." See id. at 759.

Finding these arguments persuasive, the district court stated that "Congress' plain intent in § 1254(a)(f)(4) was to clear the way for persons with [TPS] to seek adjustment pursuant to § 1255, notwithstanding any prior status, so long as they satisfy the other requirements listed in § 1255(a)." See id. In so concluding, the Court reasoned, inter alia, that "[i]t is unreasonable to conclude that Congress – in order to give people with [TPS] open access to adjustment

---

[12] This Court refers to the district court's opinion in Guerrero v. Johnson, 138 F. Supp. 3d 754 (E.D. La. 2015), as Guerrero I, and refers to the opinion of the Court of Appeals in Guerrero v. Nielsen, No. 16-30165, 2018 WL 3387534 (5th Cir. July 10, 2018), as Guerrero II herein.

procedures – would have to either amend § 1255 to specifically address the alien crewman issue in the case of applicants with [TPS] or specifically repeal the applicability of § 1255(c)(1) in the provisions of § 1254(a)." See id. at 760. Finding it "much more reasonable to simply give effect to the broad and plain language of § 1254(a)(f)(4)[,]" the district court denied the motion to dismiss on the basis that USCIS improperly denied Guerrero's application to adjust status and ultimately granted summary judgment in favor of Guerrero sua sponte. See id. at 760-61.[13]

Following an appeal, the United States Court of Appeals for the Fifth Circuit reversed the district court's entry of summary judgment in favor of Guerrero on the basis that Guerrero's application to adjust status was properly denied because his receipt of TPS "cannot change the historical fact that he last entered the country as an alien crewman, bringing him within § 1255(c)(1)'s ambit and excluding him from § 1255(a)." See Guerrero II, 2018 WL 3387534, at *1. As an initial matter, the court concluded that Guerrero met the definition of "alien crewman" under Section 1255(c)(1), reasoning that USCIS' interpretation of the term is both "functional" in that it "calls for a factual assessment of [Guerrero's] purpose at the time of his latest entry" into the United States and "retrospective" because "[i]t looks only to the facts as they existed at the time of the applicant's last entry." See id. at *3-4.

Turning to the question of whether Guerrero's subsequent receipt of TPS permitted him to adjust his status, despite being considered an alien crewman, the court explicitly rejected Guerrero's argument that his grant of TPS permits him to adjust his status, irrespective of him

---

[13] In addition to denying the defendants' motion to dismiss, the district court ordered the defendants to show cause why the court should not grant summary judgment in favor of the plaintiff sua sponte pursuant to Federal Rule of Civil Procedure 56(f)(3). See Guerrero I, 138 F. Supp. 3d at 761. The district court subsequently granted summary judgment in favor of the plaintiff in an order dated December 29, 2015. See Guerrero I, No. 15-cv-1135, 2015 WL 9478141, at *2 (E.D. La. Dec. 29, 2015), rev'd, Guerrero II, No. 16-30165, 2018 WL 3387534 (5th Cir. July 10, 2018).

13

being considered an alien crewman upon entering the United States. Specifically, the court noted that "[c]learly it is possible to maintain 'lawful status as a nonimmigrant' without being 'an alien crewman' (and vice versa)[,]" commenting that "the two concepts are ships passing in the night" and concluding that "[w]ithout a passable textual hook, Guerrero's atextual reading of [theTPS] statute fails." See id. at *5. As to the statutory analysis conducted by the district court in Guerrero I, the court of appeals rejected the district court's conclusion "that it would be 'unreasonable' to require Congress specifically to amend §§ 1255(c)(1) and 1254a(f)(4) to accommodate alien crew-members with TPS" in light of "the TPS statute's 'humanitarian aims'" on the basis that "courts 'ha[ve] no roving license . . . to disregard clear language simply on the view that . . . Congress must have [or, as a policy matter, should have] intended something broader.'" See id. at *6 (alterations in original) (internal quotation marks omitted) (quoting Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 794 (2014)). Accordingly, the Court of Appeals for the Fifth Circuit reversed the district court's grant of summary judgment in favor of Guerrero and directed that judgment be entered in favor of the Government. See Guerrero II, 2018 WL 3387534, at *6.

    **C.**    **Whether Plaintiff is an Alien Crewman for Purposes of Adjustment of Status**

        **1.**    **Arguments of the Parties**

Plaintiff maintains that he is not an alien crewman for purposes of adjustment of status under the INA, pointing to the INA's definition of an "alien" as "any person not a citizen or national of the United States," as well as its definition of "crewman" as "a person serving in any capacity on board a vessel or aircraft." (Doc. No. 13 at 5) (quoting 8 U.S.C. §§ 1101(a)(3), (a)(10)). According to Plaintiff, "the definition of crewman is written in the present form," thus demonstrating that "an alien crewman is an alien who is currently serving on board a vessel or

14

aircraft, not an alien who once served on same." (Id.) Plaintiff maintains that while he "has not specifically alleged in his complaint that he is not currently 'serving in any capacity on board a vessel or aircraft,' such [a] fact is a reasonable inference that can be drawn therefrom," and, consequently, he is not an alien crewman for purposes of the INA. (Id. at 5-6.)

In support of their motion to dismiss, Defendants maintain that Plaintiff's arrival documentation demonstrates that his "sole admission into the United States was as an alien crewman." (Doc. No. 20 at 3-4) (citing Doc. No. 1, Ex. 3). Additionally, Defendants cite case law in which courts have denied adjustment of status to an alien who entered the United States with a C-1 nonimmigrant visa, as well as the relevant regulatory provision, which states that "[a]ny alien who, on arrival in the United States was serving in any capacity on board a vessel or aircraft, or was destined to join a vessel or aircraft in the United States to serve in any capacity thereon" is barred from adjusting his status. (Id. at 4) (citing 8 C.F.R. § 245.1(b)(2)). As to Plaintiff's assertion that he is not a crewman because he ultimately did not join a crew upon his entry in to the United States, Defendants argue that "it 'is not the entry document the United States immigration authority issued to him or his intentions, but whether [Plaintiff] was issued a visa as an alien crewman and entered the United States as a crewman' that is the 'pertinent inquiry.'" (Id. at 5) (quoting Chica-Roman, 462 F. App'x at 224).

### 2. Whether Plaintiff is an Alien Crewman

Having considered the arguments advanced by the parties in connection with Defendants' motion to dismiss, and upon review of the allegations in the amended complaint, the Court concludes that Plaintiff is an "alien crewman" for purposes of his application to adjust status. Although the amended complaint states that Plaintiff "is not an alien crewman for the purposes of [S]ection 1255(c)" (Doc. No. 17 ¶ 23) (internal quotation marks omitted), such a statement

15

constitutes a legal conclusion that is not entitled to a presumption of truth under the standard applicable to a court's analysis of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See, e.g., Iqbal, 556 U.S. at 681 (stating that the "conclusory nature" of allegations "disentitles them to the presumption of truth"). Further, while Plaintiff urges the Court to view the statutory definition of a crewman as applying only to those who are "currently serving on board a vessel or aircraft, not an alien who once served on same," Plaintiff provides no support for this proffered interpretation of the statutory provision. (Doc. No. 13 at 5.)

The exhibits accompanying the amended complaint further demonstrate that Plaintiff was admitted to the United States as an alien crewman. Plaintiff received a C1/D visa upon his arrival in the United States, which includes an annotation for "Celebrity Cruises."[14] (Doc. No. 17-1.) As explained supra, a visa with the designation "C" denotes that the visa-holder is transiting the United States, while a "D" visa indicates crewmember status.[15] The Third Circuit has explicitly rejected the argument that one cannot be considered a crewman if he holds a C-1 visa in addition to a D visa. See Sarup, 423 F. App'x at 234 (rejecting the argument that the statutory bar to adjustment of status did not apply to plaintiff because of his receipt of a C-1/D visa and noting that his "C-1 status does not mean that he cannot also be a non-immigrant alien

---

[14] Although Exhibit 1 to Plaintiff's amended complaint indicates that Plaintiff's crewman status pertained to Plaintiff's employment with "Celebrity Cruises" (Doc. No. 17-1), neither the amended complaint (Doc. No. 17), nor Plaintiff's opposition brief (Doc. No. 13), refers to any employment on the part of Plaintiff on a cruise line. However, as noted by Defendants in their supporting brief, which cites USCIS' decision denying Plaintiff's motion for reconsideration, Plaintiff "was specifically 'employed as a janitor on Celebrity Cruises' on September 6, 2009." (Doc. No. 10 at 2-3) (quoting Doc. No. 1-7 at 2).

[15] See supra note 4; see also, e.g., Moulton v. Attorney Gen., 515 F. App'x 804, 805 (11th Cir. 2013) (stating that the petitioner "applied for and obtained a C1/D visa for an alien crewman in transit").

16

crewman").[16] Moreover, regardless of whether Plaintiff intended to serve aboard a vessel, the Court must consider Plaintiff a crewman based on the type of visa he was issued, as "the pertinent inquiry in determining whether [Plaintiff] is a crewman is not the entry document . . . issued to him or his intentions, but whether [he] was issued a visa as an alien crewman and entered the United States as a crewman." See Chica-Roman, 463 F. App'x at 224 (upholding a decision of BIA on the basis that "[s]ubstantial evidence supports the BIA's determination that [the plaintiff] was issued a visa as an alien crewman in transit, as [he] testified that he acquired his visa by representing . . . that he would be entering the United States as a marine crewman in transit to work on a vessel in Japan").

### D. The Impact of Plaintiff's Subsequent Receipt of TPS on His Ability to Adjust Status

#### 1. Arguments of the Parties

Plaintiff argues that "[e]ven if he is an alien crewman, his TPS overcomes the crewmen bar" to adjustment of status. (Doc. No. 13 at 10.) In support, Plaintiff maintains that "this Court should extend the holdings of other decisions in which courts have held that the receipt of TPS is sufficient to trigger eligibility for adjustment of status" on its own, regardless of whether Plaintiff may be considered an alien crewman. (Id.) According to Plaintiff, "the plain meaning of [S]ubsection 1254a(f)(4) . . . speaks to all of [S]ection 1255, not to any one part of [S]ection 1255 in particular," and therefore, "TPS operates to overcome any and all threshold barriers to

---

[16] In Sarup, an Indian national petitioned the district court to review a decision of the BIA affirming the immigration judge's decision to pretermit his application to adjust status "because he was barred from such relief as an alien crewman." See Sarup, 423 F. App'x at 232. The immigration judge had "found that the United States consulate issued Sarup a C-1/D visa, which permitted him to enter the country as a crewman." See id. The Court of Appeals ultimately agreed that the petitioner's "C-1 status does not mean that he cannot also be a non-immigrant alien crewman," and by examining evidence including "his passport and visa, the adjustment of status application, and I-94 Form . . . no reasonable adjudicator would be compelled to arrive at a contrary conclusion than [that reached by] the BIA." See id. at 234.

17

admission." (Id.)  Further, Plaintiff asserts that "if Congress meant to bar crewmen with TPS from adjusting [status], it could easily have said so when it created TPS."  (Id. at 10-11.) Plaintiff also states that "the policy reasons for allowing unadmitted and uninspected aliens to adjust [status] hold for alien crewmen."  (Id. at 11) (citing Guerrero I, 138 F. Supp. 3d at 761). As stated by Plaintiff, any holding that he is barred from adjusting status by virtue of his designation as an alien crewman "would be absurd" because "Haitians were granted TPS in part to avoid . . . being deported to Haiti."  (Id.)

In contrast, Defendants maintain that Plaintiff's subsequent receipt of TPS does not permit him to overcome the statutory prohibition on adjustment of status for alien crewmen. (Doc. Nos. 10, 20.)  Specifically, Defendants argue that "Congress has clearly demonstrated that certain aliens remain subject to the terms of their admission, even after remaining beyond the authorized period of that admission."  (Doc. No. 10 at 15-16) (citing Bradley v. Attorney Gen., 603 F.3d 235, 241-42 (3d Cir. 2010)).  In addition, Defendants posit that because an alien may be considered an alien crewman and a TPS recipient simultaneously, Plaintiff remains ineligible for adjustment of status under Section 1255.  (Doc. No. 20 at 10.)  According to Defendants, "[w]hen reading 8 U.S.C. § 1255 in concert with 8 U.S.C. § 1254(a)(5), it becomes clear that an alien granted TPS continues to hold any previously obtained status for the duration of his TPS[,]" and as it relates to Plaintiff, "this is his crewman status."  (Id. at 12.)  Defendants maintain, therefore, that even if Plaintiff "meets the prefatory admission requirement under [S]ection 1255(a) through his TPS, his previous entry as a crewman still renders him ineligible for adjustment of status."  (Id.)

### 2. Whether Plaintiff's Subsequent Receipt of TPS Permits Him to Overcome the Bar to Adjustment of Status for Alien Crewmen

The Court concludes that USCIS correctly denied Plaintiff's application to adjust status because Plaintiff's subsequent receipt of TPS does not permit him to overcome the prohibition on adjustment of status for alien crewmen. As an initial matter, because the issue presented by Plaintiff's claim is one of statutory interpretation, the Court's analysis "begins with an examination of the plain language of the statute." See Alston v. Countrywide Fin. Corp., 585 F.3d 753, 759 (3d Cir. 2009) (quoting United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009)). Like the Fifth Circuit in Guerrero II, this Court recognizes that the text of Section 1255(c)(1)'s prohibition on adjustment of status "is clear[,]" for "the relief [Plaintiff] seeks 'shall not be applicable to an alien crewman' like him." See Guerrero II, 2018 WL 3387534, at *4 (quoting 8 U.S.C. § 1255(c)(1)). Moreover, as the Fifth Circuit aptly noted, that the TPS statute permits those with TPS to "be considered as being in, and maintaining, lawful status as a nonimmigrant" is of no moment because the TPS statute does not "erase[] the historical fact that [Plaintiff] last entered the United States" as an alien crewman and, therefore, remains subject to Section 1255(c)(1)'s prohibition on adjustment of status. See id.[17]

Further, the analysis herein is consistent with other case law within the Third Circuit reaffirming the prohibition on adjustment of status for alien crewmen. See Chica-Roman, 462 F. App'x at 224 ("By choosing to seek entry into the United States as a crewman, [the plaintiff] agreed to the limitations associated with that status. Therefore, he cannot now avoid the consequences of those restrictions . . . by claiming not to be a crewman."); Sarup, 423 F. App'x

---

[17] Plaintiff's arguments against dismissal are further weakened by the fact that one may, as Plaintiff does, be considered an alien crewman under the INA and possess TPS simultaneously, which the court recognized in Guerrero II. See Guerrero II, 2018 WL 3387534, at *5 ("Clearly it is possible to maintain 'lawful status as a nonimmigrant' without being 'an alien crewman' (and vice versa): the two concepts are ships passing in the night.").

at 233-34 (affirming decision of Immigration Judge pretermitting application to adjust status where the Immigration Judge "found that the United States Consulate issued [the plaintiff] a C-1/D visa, which permitted him to enter the country as a crewman").  Accordingly, having found that USCIS' denial of Plaintiff's I-485 application to adjust status was proper, the Court concludes that USCIS' decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  See 5 U.S.C. § 706(2)(A).

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint in its entirety.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania